59 F.3d 171
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Nancy J. NASH, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-5376.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1995.
 
 On Appeal from the United States District Court for the Middle District of Tennessee, No. 92-00578; L. Clure Morton, District Judge.
 M.D. Tenn.
 AFFIRMED IN PART AND VACATED IN PART.
 Before: KENNEDY and NORRIS, Circuit Judges; TAYLOR, District Judge.*
 OPINION
 PER CURIAM.
 
 
 1
 Nancy J. Nash ("claimant") appeals from the district court's summary judgment order, which affirmed the decision of the Secretary of Health and Human Services (the "Secretary") to partially deny her application for supplemental security income benefits under Title XVI of the Social Security Act. We affirm the district court's order in part, vacate in part, and remand to the district court with instructions to remand to the Secretary.
 
 I.
 
 2
 Claimant filed applications for supplemental security income benefits in 1982, 1984, and 1988. She contended that a series of impairments rendered her unable to perform her past relevant work as a maid. All claims were denied. In 1990, an Administrative Law Judge ("A.L.J.") held a hearing on all of these applications. In 1991, the A.L.J. issued a decision that was partially favorable to claimant.
 
 
 3
 The A.L.J. held that under the Secretary's regulations, claimant became disabled on February 18, 1988, her fiftieth birthday. He found, however, that from August 5, 1982 until February 18, 1988, claimant's impairments did not meet or equal any listed impairment. He further found that although claimant's condition as of August 5, 1982 prevented her from performing her past relevant work, she retained the capacity to perform a significant number of jobs in the national economy. Accordingly, he held that claimant was not disabled before February 18, 1988.
 
 
 4
 The Appeals Council refused claimant's request to review the A.L.J.'s decision to deny benefits for the period August 5, 1982 to February 18, 1988. Claimant sought review in the district court. On cross-motions for summary judgment, a magistrate judge recommended granting the Secretary's motion, denying claimant's motion, and dismissing this action. The district court adopted the report and recommendation in full without additional comment.
 
 II.
 
 5
 Claimant argues that there is not substantial evidence in the record to support the Secretary's refusal to find her eligible for benefits under Sec. 12.05(C) of the listed impairments. One is eligible for benefits under that section if he has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation in function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.05(C). Because claimant's lowest IQ score was 71 (verbal), she does not meet the requirements of Sec. 12.05(C). Indeed, she concedes this point.
 
 
 6
 Claimant contends, however, that the A.L.J. erred by failing to consider whether her impairments were equivalent to Sec. 12.05(C). She argues that the severity of her additional impairments outweigh the one point by which her IQ exceeds the maximum allowed by the listing. Although the A.L.J. explicitly found that "[n]one of claimant's impairments either alone or in combination have met or equalled any listing of impairments," Tr. at 21, when discussing the equivalency issue in his opinion, he mentioned only claimant's psychological impairments. Id. at 16. He did not address claimant's foot spur and asthma, physical limitations that he found to be "severe." Id. at 21. By its terms, Sec. 12.05(C) requires an IQ of 70 or less and one additional physical or mental impairment. Claimant, in contrast, has two additional physical impairments and some psychological problems. These extra limitations might counterbalance the IQ of 71.
 
 
 7
 The additional impairments do not necessarily require a finding of disability. See Dorton v. Heckler, 789 F.2d 363, 366-67 (6th Cir.1986) (refusing to disturb the Secretary's findings on medical equivalence, even where a claimant had an impairment very close to meeting a listing and other medical problems). It is essential, however, that the A.L.J. consider all of claimant's impairments--physical and mental--in making the equivalency determination. See Land v. Secretary of Health and Human Services, 814 F.2d 241, 245 (6th Cir.1986) (noting that a claimant "will be found disabled if she suffers from one or more unlisted impairments that singly or in combination are the medical equivalent of a listed impairment."). Here, it might be argued that the A.L.J. did consider and reject claimant's equivalency argument. Indeed, the A.L.J. named each of claimant's impairments in his finding of fact number two, and in the very next finding, number three, found these impairments not equivalent to any listed impairment.
 
 
 8
 Rather than speculate as to whether the A.L.J. conducted the proper analysis, however, we think it better for the Secretary to revisit this issue. Accordingly, we vacate the determination that claimant's impairments are not equivalent to any listed impairment and return the action to the district court with instructions to remand it to the Secretary for further proceedings. On remand, the Secretary should specifically address the impairments from which the A.L.J. found claimant to suffer and explain why--collectively--they are or are not equivalent to the impairment listed under Sec. 12.05(C).
 
 
 9
 Claimant also challenges the A.L.J.'s finding that, before February 18, 1988, she could perform a significant number of jobs existing in the national economy. In making this finding, the A.L.J. relied upon the testimony of a vocational expert who testified in response to several hypotheticals. In response to the first hypothetical, which assumed that claimant could perform only sedentary work--with some other limitations, the vocational expert testified that claimant could perform 70,000 jobs that existed in the national economy. In response to the second hypothetical, which increased claimant's exertional residual functional capacity, the vocational expert testified that claimant could perform an additional 76,300 jobs.
 
 
 10
 In finding claimant capable of performing a significant number of jobs existing in the national economy, the A.L.J. listed all but one of the occupations named in response to both hypotheticals. Tr. at 22. As claimant contends, however, the A.L.J. found claimant physically limited as set forth in the first hypothetical. Id. at 21. Accordingly, claimant argues that the A.L.J. mistakenly considered 68,000 jobs.[1] Claimant contends that this error renders the A.L.J.'s finding that she could have performed jobs existing in significant numbers analytically defective and not supported by substantial evidence.
 
 
 11
 Claimant is correct that the A.L.J.'s factual findings regarding her condition do not support his finding that she could have performed the jobs that the vocational expert identified in response to the second hypothetical. This error does not require reversal, however. In response to the first hypothetical, the A.L.J. stated that claimant could perform 70,000 jobs. As the magistrate judge recognized, the 70,000 jobs constitute a "significant number" under the facts of this case. Thus, if the first hypothetical accurately stated claimant's condition, as found by the A.L.J., substantial evidence supports the A.L.J.'s determination about claimant's ability to work.
 
 
 12
 Claimant contends that a serious flaw invalidates the first hypothetical, however. The "severe" impairments that the A.L.J. found claimant to have before February 18, 1988 included "situational depression." Id. at 21. The first hypothetical, although it accurately listed the other impairments found by the A.L.J., did not mention situational depression. Claimant argues that, because of this omission, the vocational expert's testimony cannot be considered substantial evidence.
 
 
 13
 We agree with claimant that the A.L.J. should have included situational depression in the hypothetical. A vocational expert's testimony can constitute substantial evidence only if the testimony is in response to a hypothetical question that accurately portrays a claimant's abilities. Davis v. Secretary of Health and Human Services, 915 F.2d 186, 189 (6th Cir.1990). We are not persuaded that this error requires reversal, however, because the record makes clear that the omission did not affect the substance of the vocational expert's testimony.
 
 
 14
 Although the A.L.J. did not explain what he meant when he used the term "situational depression" in his findings of fact, he did state in his written opinion that during the period in question claimant did not have "disabling mental impairments," but rather "had only moderate daily living restrictions and only slight difficulties in maintaining social functions." Tr. at 17. Substantial evidence supports this finding. On cross-examination by claimant's counsel, the vocational expert testified that claimant could perform any of the identified jobs if she had "a fair ability" to function at work, relate to co-workers, interact with supervisors, and deal with work stresses. Id. at 91. In our view, a person whose psychological problems cause only "moderate restrictions" and "slight difficulties" by definition retains a "fair ability" in these four areas. Thus, we conclude that the hypothetical posed on cross-examination cured the error made by the A.L.J. in questioning the vocational expert. The vocational expert's response establishes that claimant's psychological problems did not prohibit her from performing the identified jobs.
 
 
 15
 Claimant correctly points out that the expert further testified during cross-examination that she could not perform the identified jobs if she had "a seriously limited" ability to deal with co-workers and work stresses or a level of anxiety that frequently affected her ability to concentrate on a task. Id. at 91-93. These limitations amount to "disabling mental impairments," however, which the A.L.J. explicitly found claimant did not have. The A.L.J. properly ignored testimony given in response to a hypothetical that overstated claimant's impairments.
 
 
 16
 Because we hold that the defective hypothetical did not affect the result of the administrative proceedings, we do not reach claimant's argument that the magistrate judge and the district court erred by failing to address this issue. That failure amounts, at most, to harmless error. As to claimant's other arguments, we have carefully reviewed the briefs of the parties and the record on appeal, and we are not persuaded that the district court erred in granting summary judgment to the Secretary on those issues. Accordingly, except as explained above, we affirm the judgment of the district court upon the reasoning set out in the magistrate judge's October 5, 1993 Report and Recommendation.
 
 III.
 
 17
 The order granting summary judgment is affirmed in part and vacated in part, and this cause is remanded with instructions for the district court to remand this cause to the Secretary for further proceedings according to law and consistent with this opinion.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The mistake involved 68,000 jobs rather than the full 76,300 that the vocational expert identified in response to the second hypothetical because the A.L.J. omitted one occupation, which accounted for 8,300 jobs, from the list of occupations that he found claimant able to perform